UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CYNTHIA HAMAD,
as natural guardian of NADYA
HAMAD, a minor,

        Plaintiff,

v.                              CASE NO.  8:04-cv-1940-T-17MAP

BUSCH ENTERTAINMENT CORP.,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff sued the Defendant claiming its negligence caused permanent injuries to her child's right hip.  The parties settled the case for $165,000 conditioned on the Court's approval.  Upon Plaintiff's motion, the district judge appointed a guardian *ad litem* to evaluate the settlement.  He opined it was not in the minor's best interest and recommended the Court reject it (doc. 35).  Plaintiff now requests this Court disapprove the conditional settlement while Defendant petitions for approval (docs. 40, 41).  After hearing from all the parties and reviewing their evidentiary submissions, I recommend the district judge approve the settlement because it is in the best interest of the child given the Plaintiff's proof problems and the uncertainty, assuming Plaintiff were to win at trial, that any damage award would exceed the real value of the current offer.[1]

---

[1] The district judge referred this matter to me to conduct proceedings and issue a report and recommendation on the issue of enforcement of the conditional settlement (doc. 43).  *See* 28 U.S.C. §636.

*A. Standard of review*

"In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate, and reasonable and is not the product of collusion between the parties … Settlement is generally favored because it conserves scarce judicial resources." *In re Smith*, 926 F.2d 1027, 1028-29 (11th Cir. 1991) (citations omitted). The judge is only to consider the child's interest, not whether the settlement is financially excessive, in deciding whether to approve the settlement. *Id.*

*B. Background*

On June 3, 2000, Nadya Hamad, then six years old, rode the log flume ride at Busch Gardens, which is a sort of water roller coaster. When she attempted to exit her log at the ride's conclusion, another one bumped hers from behind. She lost her balance and struck her right knee on the interior of the log. Five days later, complaining of right knee pain, she visited her pediatrician, who diagnosed a knee strain. Her pain increased afterward, and on June 10, 2000, she reported to the emergency room at Largo Medical Center where doctors diagnosed a Grade II or III right slipped capital femoral epiphysis (SCFE). In other words, the femoral head (growing end of the thigh bone) had displaced outside of her epiphysis (hip socket). This required emergency surgery the next day to re-align and insert pins into her right hip. Unfortunately, the child developed complications. The collapse of the femoral head and post-traumatic avascular osteonecrosis (lack of blood flow) necessitated a second surgery on October 21, 2000, to stabilize and re-vascularize her femoral head.[2]

---

[2] Two years later Nadya sustained a left SCFE requiring surgery, after tripping and falling onto her left knee. Fortunately, the injury to her left hip was not as serious as the right one.

Plaintiff claims her child's injuries to her right hip stem from this June 3 collision and Defendant's negligent operation of the ride.[3] More specifically, she claims Defendant's employees negligently failed to abide by established policies and procedures for stabilizing incoming boats, assisting young children, and warning occupants that their boat is about to be struck from behind. Just before the final pretrial conference, the parties settled their dispute with Defendant agreeing to pay Plaintiff $165,000. As part of the understanding with Plaintiff, Plaintiff's counsel agreed to waive his firm's fees. Thus, the real value of the settlement approximates $231,000 less litigation costs.[4]

*C. Disputed Issues*

Whether the bumping logs caused Nadya's right SCFE is vigorously disputed, and Plaintiff's proof that it did is particularly problematic. Three reasons make proving this link difficult – the current scientific uncertainties about the causes of SCFE, the known risk factors for the condition, and the physics of the collision. Accordingly, the Defendant's liability is not only debatable but questionable, and the guardian *ad litem's* report does not persuasively argue that the Plaintiff will be able to prove the Defendant's negligence caused Nadya's injuries or that the Defendant's contrary proof is wanting.[5]

---

[3] Plaintiff does not claim the collision caused her child's left SCFE.

[4] Plaintiff counsel's fees amount to $66,600. As part of settlement understanding with Plaintiff, Plaintiff's counsel did not waive his firm's costs, which at this stage amount to $38,619.24. Liens for medical services in the amount of $26,123.55 are also pending against the Plaintiff.

[5] Much of the debate, at least from the guardian *ad litem*, has focused on the issue of proximate cause and the monetary adequacy of the offer. However, Plaintiff must first prove the Defendant acted negligently. That too is in dispute, and the minor forces of the collision make proof of negligence contestable and the outcome uncertain.

All three orthopedic experts involved in this case, the Plaintiff's treating surgeon (Dr. Sheila Love), the Plaintiff's expert (Dr. Paul Sponseller), and the Defendant' expert (Dr. Randall Loder) agree certain risk factors, like obesity, predispose a child for the disorder. Thus, all agree that Plaintiff, who was then a 108 pounds and at or above the 95th percentile in her age group, presented a known statistical risk for the condition. They also uniformly acknowledge much about what causes SCFE is unknown or theoretical, a fact that necessarily clouds any opinion that the incident caused Nadya's injuries. Lastly, all three experts recognize Nadya suffered a low impact collision.

While the three agree on much, they draw different conclusions from Nadya's clinical history, specifically the timing of her complaints about knee pain in relation to Busch Gardens incident and the energy forces on her hip. Plaintiff's expert gives two reasons for opining the incident likely caused Nadya's right SCFE: it was the most proximate event to the beginning of her symptoms; and, at her young age a spontaneous slippage without a traumatic event is unexpected. The collision, Dr. Loder theorizes, probably threw Nadya forward. Her growth plate pulled off when she caught herself; furthermore, once her hip became unstable, it was at risk for progression. Daily activities could have caused further slippage.

In contrast, the Defendant's expert concludes the slow collision could not have exerted the traumatic forces needed to create the SCFE. Instead, the most logical cause of Nadya's SCFE was her weight at the time of the accident. And the Defendant's expert buttresses his opinion with Nadya's clinical history surrounding the incident showing a ten

to twelve day history of right knee pain and limping *before* the Busch Gardens accident.[6] This, according to the Defendant's expert, evidences a "stable slip" and contradicts the Plaintiff expert's theory of a sudden slip. Later, Nadya's slip became "unstable," meaning she could not walk and required an emergency evaluation.

Plaintiff's treating surgeon also doubts the Busch Gardens incident caused the slip. Dr. Love, who has significant experience with this condition and whose input as a treating physician would likely be more persuasive with a jury, questioned whether a low impact collision like Nadya's could have caused the SCFE. From her experience, traumatic forces like those in a car crash would be needed to cause a sudden SCFE as severe as Nadya's. Nothing here ever approached that force. Rather, the more logical conclusion is that Nadya's weight primarily contributed to the slip. Moreover, Nadya's wide growth plate at the time of the injury (the growth plate is what slipped and it was quite wide) implies the condition had been ongoing for a time.

Whatever the cause of her injuries, Nadya continues to suffer from the effects of her right SCFE. Now twelve, she walks with a pronounced limp, needs to rest after walking approximately one block, and requires a wheelchair for any significant distances including getting to and from her school classes. Nadya's right leg is shorter than her left leg; this has altered her gait causing her knee, ankle, back, and neck pain. The injury has also impacted her in other ways. While she is intelligent and has an exceptional academic record, she reports depression from stigmatization at school due to her appearance and sometime use of a wheelchair. Physicians agree that she will likely experience arthritis and pain in the future

---

[6] Knee pain can be a symptom of a SCFE.

and will require either hip replacement or fusion surgery estimated to cost $22,000.00, not including rehabilitation costs. Hip replacements can require revision surgeries as often as every ten years, depending on activity levels.

Nadya's difficult and uncertain future is why the guardian *ad litem* recommends the Court reject the settlement. Although he acknowledges proximate cause is "disputed and contested," the guardian *ad litem* thinks the amount should be more. Yet, while he says it should be more, he also recognizes Nadya could lose at trial and receive nothing. In fact, the guardian *ad litem* has met and discussed the case with the Plaintiff and her child and has specifically informed both that "no assurances or guarantees of any kind can be made that a jury will find in favor of Nadya on this critical issue." *See* doc. 35 at pp. 7-8. Similarly, the Plaintiff's attorney admits his own research on similar cases shows that juries find in favor of defendants at least half the time.

The guardian *ad litem*'s report reflects the Plaintiff's concerns about Nadya's future medical costs, an amount she now considers inadequate. She reaffirmed her misgivings about the proposed settlement at the hearing before me and expressly doubted whether any amount, no matter how large, could ever adequately compensate Nadya. Instead, she fervently wants her daughter to have the life and promise experienced before the accident. Mrs. Hamad's emotional plea is understandable, and she undoubtedly realizes that her wish is impossible. No mother wants her child to face such a prognosis.

When parties to a dispute are unable to resolve their differences, our justice system applies an adversarial process to hopefully find the truth and a solution. But the parties' quest for their respective perceptions about justice carries risk because the outcome of any

trial is always uncertain. Here, the party bearing the greatest risk is the child. The law imposes the burden of proof on her young shoulders. And a verdict against her impacts her more than anyone else. It means she could go without the medical care or the advantages the current settlement could buy. Accepting this risk would be more palatable if her mother were able to replace the settlement's financial void. But that is not the case. Mrs. Hamad is employed by the Salvation Army as a care coordinator, and her income level is close to disqualifying Nadya from care under the Children's Medical Services which has provided her care thus far. Though Mrs. Hamad can get dependant medical insurance from her job, it is likely not affordable and does not cover all of Nadya's future medical needs, which are estimated at $75,000 to $100,000.

All this makes going to trial risky for Nadya, particularly considering the evidentiary and financial realities of her case. It would be different it Plaintiff's evidence strongly suggested the Defendant acted negligently and its negligence proximately caused the child's injuries; but, that is not so. Besides the conflicting experts, the Defendant will dispute its employees breached any duties owed to Plaintiff, note Nadya walked around Busch Gardens after the incident, point to medical records showing Nadya fell in her home five or six days after her Busch Gardens visit, argue that fall (rather than the one at Busch Gardens) caused her severe SCFE, and emphasize the Plaintiff did not report the event until fourteen months later. Nor will successfully proving negligence mean Nadya will win a higher net damage award than offered in this settlement. A trial necessarily entails more litigation costs, and Plaintiff's counsel will no longer waive his fees. Thus, any jury award must be significantly higher than the current settlement just to match the real value of the offer. Indeed, Plaintiff's

counsel estimates to equal the value of the offer, the jury would have to award at least $250,000.

*D. Conclusion*

After a hearing, examining the evidentiary record, reviewing the disputed liability and causation issues, and considering Plaintiff's counsel's fee waiver, I conclude the parties' settlement is fair, adequate, reasonable, and, more importantly, in the best interests of the child. Accordingly, I recommend the district judge approve and enforce the settlement. For the reasons stated herein, it is hereby

RECOMMENDED:

1. That the conditional settlement in the amount of $165,000 be approved.

IT IS SO REPORTED in chambers at Tampa, Florida on July 6, 2006.

*/s/ Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*).

Copies furnished to:

The Hon. Elizabeth A. Kovachevich
Counsel of Record