UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CYNTHIA HAMAD
as natural guardian of
NADYA HAMAD, a minor,

       Plaintiff,

v.                                         CASE NO. 8:04-cv-1940-T-17MAP

BUSCH ENTERTAINMENT CORP.,

       Defendant.

-----------------------------------------------/

## ORDER ADOPTING REPORT AND RECOMMENDATION

       Plaintiff, CYNTHIA HAMAD, as natural guardian of NADYA HAMAD, a minor, filed a complaint (Docket No. 2) on May 24, 2004, against Defendant, BUSCH ENTERTAINMENT CORP., claiming that Defendant's negligence caused permanent injuries to her child's right hip. The parties settled the case for $165,000.00 conditioned upon the Court's approval.

       Upon Plaintiff's motion, the district judge appointed a guardian *ad litem* to evaluate the settlement. The guardian *ad litem* opined that the proposed settlement was not in the minor's best interest and recommended that the Court reject it (Docket No. 35). Thereafter, the Plaintiff requested that this Court disapprove the conditional settlement while the Defendant petitions for approval (Docket Nos. 40, 41, respectively).

       This Court, under authority of 28 U.S.C. §636(b)(1)(B), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 6.02, Local Rules of the Middle District of Florida, referred the motion to the Honorable Mark A. Pizzo, United States Magistrate Judge, by Order of Referral dated April 20, 2006 (Docket No. 43), to conduct proceedings and issue a report and recommendation on the issue of enforcement of a conditional settlement.

1

After considering the parties' submissions and oral arguments, Judge Pizzo on July 6, 2006, filed a Report and Recommendation ("R & R")(Docket No. 50) wherein he recommends that this Court approve the settlement. Judge Pizzo determined that the settlement is in the best interest of the child given the Plaintiff's proof problems and the uncertainty, assuming Plaintiff were to win at trial, that any damage award would exceed the real value of the current offer. On July 14, 2006, Plaintiff filed her Objections to Magistrate's Report and Recommendation (Docket No. 52) ("Plaintiff's Objections"). On July 27, 2006, Defendant filed its Response to Plaintiff's Objections to the Proposed Findings and Recommendation (Docket No. 54).

Although the Magistrate Judge heard oral testimony in regards to this motion, the parties did not cite the written transcript (Document No. 59) in the responses to the report and recommendation. After ordering that a written transcript be filed (Docket No. 53), this Court reviewed the testimony of the proceeding that occurred on May 12, 2006 before the Honorable Mark A. Pizzo. After reviewing Judge Pizzo's findings in light of Plaintiff's objections, this Court adopts the Magistrate Judge's report and recommendation.

**I.      REVIEW OF REPORT AND RECOMMENDATION**

This Court must first determine the standard to be applied in reviewing the Magistrate Judge's findings of fact and law. Under the appropriate standard, this Court must then review: (1) the law the Magistrate Judge followed in recommending whether to enforce the conditional settlement (Document No. 43), (2) the law the Magistrate Judge followed which forms the basis of the cause of action, and (3) the Magistrate Judge's findings in light of the plaintiff's objections.

**A.      Standard of Review for the Report and Recommendation.**

Under the Federal Magistrate's Act (the "Act"), Congress vested Article III judges with the power to authorize a United States Magistrate Judge to conduct evidentiary hearings. The relevant portion of this act is found at 28 U.S.C. § 636. A district court judge may designate a United States Magistrate Judge to conduct hearings, including evidentiary hearings, in order to submit proposed findings of fact and recommendations (ie. R & R) for the disposition of motions for injunctive relief. 28 U.S.C. § 636(b)(1)(B). Within ten days after being served with a copy of the R & R, any party may file written objections to the proposed findings and recommendations. *Id.* Section 636(b)(1) also states that a judge of the court shall make a *de novo* determination of those portions of the R & R to which objection is made. 28 U.S.C. § 636(b)(1).

In *U.S. v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), the Court upheld the constitutionality of this provision of the Act.  The Court  found that Congress adequately protected the Act against an Article III  constitutional challenge by subjecting the Magistrate Judge's proposed  findings and recommendations to a de novo determination by the judge, who then exercises ultimate authority to issue an appropriate order.  447 U.S. at 681, 100 S.Ct. at 2415.  In *Jeffrey S. v. State Board of Education of State of Georgia*, 896 F.2d 507, 512 (11th Cir.1990), the court stated that the *de novo* review requirement is essential to the constitutionality of section 636. The court further stated that section 636(b)(1)'s nonconsensual reference is saved from constitutional infirmity by the retention in the Article III judge of the ultimate adjudicatory power, to be exercised after assistance from and upon the recommendation of the Magistrate Judge.  *Id.* at 512-13 citing *Hall v. Sharpe*, 812 F.2d 644, 647 (11th Cir.1987).  Accordingly, the *de novo* review is based in a realization that only the district court judge can constitutionally dispose of a matter such as that in the instant case.

Rule 72 of the Federal Rules of Civil Procedure places into practice the powers codified in 28 U.S.C. § 636(b)(1); *see also*, Rule 6.02, Local Rules of the United States District Court, Middle District of Florida.  Rule 72 follows the statutory example and sets forth different provisions for the two types of pretrial matters that can be referred to a Magistrate Judge.  The first provision under § 636(b)(1)(A) states in part that a judge may  designate a Magistrate Judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.  Rule 72(a) refers to the type a pretrial matter set out in § 636(b)(1)(A) as one that is not dispositive of a claim or defense.

The second provision, under § 636(b)(1)(B), states in part that a judge may designate a Magistrate Judge to conduct hearings, including evidentiary hearings, and to submit proposed findings of fact and recommendations (i.e. R & R) for disposition, by a judge, of any motion excepted in subparagraph (A). Thus, subparagraph (B) applies to the enforcement of a conditional settlement.   Subparagraph (B) also allows any party, within 10 days, to file written objections to such proposed findings and recommendations.  Additionally, § 636(b)(1) states that a judge shall

make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.

Rule 72(b) describes those matters that are excepted in § 636(b)(1)(A) as ones that are dispositive of a claim or defense. Since the enforcement of a conditional settlement is excepted from § 636(b)(1)(A), it is dispositive and a R & R submitted by a Magistrate Judge is subject to *de novo review* by the district judge. This part of Rule 72 also reiterates the need for a timely objection and a *de novo* determination upon the record. Thus, the Magistrate Judge's R & R in the instant case is reviewed *de novo* by the district judge who must then accept it, reject it, or modify it, in whole or in part.

The issue of whether the same *de novo* standard of review is applicable has been addressed by courts in the Eleventh Circuit. In *LoConte v. Dugger*, 847 F.2d 745 (11th Cir.1988), the court addressed the issue of what standard of review the appellate court would use in reviewing the district court's adoption of a Magistrate Judge's R & R. In do so, the court examined what standard of review the district court was required to use in its review. The court in *LoConte* found that there are three different categories of findings reviewable on appeal: (1) findings of fact made by the Magistrate Judge to which the parties did not object; (2) findings of fact made by the Magistrate Judge to which the parties did object with the objections being resolved *de novo* by the district court; and (3) independent findings of fact made by the district court. *Id.* at 749. In reference to the findings stated in category (2), the *LoConte* court also stated that:

> Whenever any party files a timely and specific objection to a finding of fact by a magistrate, the district court has an obligation to conduct a *de novo* review of the record with respect to that factual issue. (citations omitted). As the use of the phrase *de novo* implies, the district court's consideration of the factual issue must be independent and based upon the record before the court.... [T]he factual conclusions reached by the district court are subject only to a "clearly erroneous" standard of review on appeal. *Id.* at 750; *See also Jeffrey S. v. State Board of Education of State of Georgia*, 896 F.2d 507, 513 (11th Cir. 1990); *Mannings v. School Board of Hillsborough County, Florida*, 796 F.Supp. 1491, 1492 (M.D.Fla. 1992); *McHenry v. The Florida Bar*, 808 F.Supp. 1543, 1544 (M.D.Fla. 1992). It is clear that findings by the Magistrate Judge, to which the parties have made timely objections, are subject to de novo review by the district court judge.

In *Mohammed v. Chevron U.S.A. Inc.*, 738 F.Supp. 1383, 1385 (M.D.Fla.1990), the district court stated that "[a]fter objection, the findings of the Magistrate are entitled to be adopted unless they are found to be clearly erroneous." However, in headnote [1], which precedes the reported opinion, the word "after" is changed to the word "absent." Given this conflict, and since

4

the court in Mohammed did not cite to any authority contrary, it is assumed that the *Mohammed* case stands for the proposition reflected in the headnote.

The standard of review applicable under categories (1) and (3), supra, are different from the *de novo* review standard of category (2). When no objections are made to the Magistrate Judge's R & R, the case law seems to indicate that the district court should review the findings using the same clearly erroneous standard of review that an appellate court must use when reviewing the district court's findings.

In *Nettles v. Wainwright*, 677 F.2d 404, 409 (5th Cir. Unit B 1982) (en banc),the court stated that if no objections are filed, the judge may accept, reject, or modify, in whole or in part, the findings and recommendations. The Nettles court further states that it is arguable that, when no objections are filed, the parties have accepted the Magistrate Judge's report and have consented to the recommendations. *Id.* In *Jeffrey*, the court stated that on appeal there is little practical distinction between the plain error standard of review applicable to unchallenged findings of fact by a Magistrate Judge and the clearly erroneous standard of review relevant to fact findings by the district court. 896 F.2d at 513, citing *Licente*, 847 F.2d at 750. Although this Court finds no cases that explicitly state the clearly erroneous standard applies to non-objected to findings by the Magistrate Judge, or additional findings by the district court judge, this Court holds that to be the standard of review.

## II.    BACKGROUND

Although this Court adopts the Magistrate Judge's report and recommendation, a summary of the facts and issues in this case is presented for the benefit of the reader. They are not intended to replace, modify, or supplement the findings of the report and recommendation.

On June 3, 2000, Nadya Hamad, then six years old, rode the log flume ride at Busch Garden, which is sort of a water roller coaster. When Nadya attempted to exit her log at the ride's conclusion, another log bumped hers from behind. Nadya lost her balance and struck her right knee on the interior of the log. Five days later, complaining of right knee pain, she visited her pediatrician, who diagnosed a knee strain (Document No. 50, p.2). Subsequently, Nadya experienced increasing pain. On June 10, 2000, she reported to the emergency room at Largo Medical Center where doctors diagnosed a Grade II or III right slipped capital femoral epiphysis (SCFE). The femoral head (growing end of the thigh bone) had displaced outside of her

5

epiphysis (hip socket).  This required emergency surgery the next day to re-align and insert pins into her right hip.  Unfortunately, the child developed complications.  The collapse of the femoral head and post-traumatic avascular osteonecrosis (lack of blood flow) necessitated a second surgery on October 21, 2000, to stabilize and re-vascularize her femoral head.  Two years later, Nadya sustained a left  SCFE requiring surgery, after tripping and falling onto her left knee.  Fortunately, the injury to her left hip was not as serious as the right one.

Plaintiff claims her child's injuries to her right hip stem from this June 3 collision and Defendant's negligent operation of the ride.  Plaintiff does not claim the collision caused her child's left SCFE.   In particular, Plaintiff claims that Defendant's employees negligently failed to abide by established policies and procedures for stabilizing incoming boats, assisting young children, and warning occupants that their boat is about to be struck from behind.  Just before the final pretrial conference, the parties settled their dispute with Defendant agreeing to pay Plaintiff $165,000.00.  As part of the understanding with Plaintiff, Plaintiff's counsel agreed to waive his firm's fees. Plaintiff's counsel's fees amount to $66,000.00.  As part of settlement understanding with Plaintiff, Plaintiff's counsel fees did not waive his firm's costs, which at this stage amount to $38,619.24.  There are liens for medical services in the amount of $26,123.55 are also pending against the Plaintiff.  Thus, the real value of the settlement approximates $231,000.00 less the litigation costs.

**III.    ANALYSIS**

Under the appropriate standard, this Court must review the law the Magistrate Judge followed in recommending whether to enforce the conditional settlement (Document No. 43). "In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate, and reasonable and is not the product of collusion of the parties...Settlement is generally favored because it conserves scarce judicial resources." *In re Smith*, 926 F.2d 1027, 1028-29 (11th Cir. 1991) (citation omitted).  The judge is only to consider the child's interest, not whether the settlement is financially excessive, in deciding whether to approve settlement." *Id.*  Section 744.387(3)(a), Florida Statutes (2005) provides in pertinent part that "[n]o settlement after an action has been commenced by or on behalf of a ward shall be effective until being approved by the court having jurisdiction of the action."

The Magistrate Judge conducted an evidentiary hearing during which he considered the

6

report of the guardian *ad litem* on behalf of the Plaintiff seeking to have the Court disapprove of the contemplated settlement that was previously negotiated (Document No. 59). After considering the parties' submissions and oral arguments, Judge Pizzo on July 6, 2006, filed a Report and Recommendation ("R & R")(Docket No. 50) wherein he recommends that this Court approve the settlement. The Magistrate Judge noted that whether the bumping of the logs caused Nadya's right SCFE is vigorously disputed, and Plaintiff's proof that it did is particularly problematic (Document No. 50, p. 3). The Magistrate Judge determined that there were three reasons which make proving this link difficult: (1) the current scientific uncertainties about the causes of SCFE; (2) the known risk factors for the condition; and (3) the physics of the condition. (Document No. 50, P.3) Accordingly, the Magistrate Judge found that the Defendant's liability is not only debatable but questionable, and the guardian ad litem's report does not persuasively argue that the Plaintiff will be able to prove Defendant's negligence caused Nadya's injuries or that the Defendant's contrary proof is wanting. (Document No. 50, P.3)

The Magistrate Judge determined that all three experts involved in the case agree that certain risk factors, like obesity, predispose a child for SCFE (Document No. 50, P.4). Additionally, the Magistrate Judge found that the experts agree that Plaintiff, who was 108 pounds and at or above the 95th percentile in her age group, presented a known statistical risk for the condition (Document No. 50, P.4) . Furthermore, the Magistrate Judge noted that the experts uniformly acknowledge that much about the causes of SCFE is unknown or theoretical and that the experts recognize Nadya suffered a low impact collision (Document No. 50, p.4).

However, the Magistrate Judge found that the experts draw different conclusions from Nadya's clinical history, specifically the timing of her complaints about knee pain in relation to the Busch Gardens incident and the energy forces of her hip. Plaintiff gives two reasons for opining the incident likely caused Nadya's right SCFE: it was the most proximate event to the beginning of her symptoms; and, at her young age a spontaneous slippage without a traumatic event is unexpected (Document No. 50, p.4).

In contrast, the Magistrate Judge noted that the Defendant's expert concludes the slow collision could not have exerted the traumatic forces needed to create the SCFE (Document No. 50, p.4). Additionally, Plaintiff's treating surgeon questioned whether a low impact collision like Nadya's could have caused the SCFE. (Document No. 50, p. 5). The Magistrate Judge

determined that the more logical conclusion is that Nadya's weight primarily contributed to the slip. (Document No. 50, p.5) Moreover, the Magistrate Judge found that Nadya's wide growth plate at the time of the injury implies the condition had been ongoing for a time (Document No. 50, p.5)

The Magistrate Judge recognized the difficulties that Nadya continues to suffer from her right SCFE (Document No. 50, pp.5-6). Physicians agree that she will likely experience arthritis pain and in the future require either hip replacement or fusions surgery estimated to cost $22,000.00, not including rehabilitation costs. (Document No. 6) Also, the Magistrate Judge noted the guardian *ad litem's* report focuses on proximate cause and the monetary inadequacy of the offer, reflecting the Plaintiff's concerns for her child's future medical needs (Document No. 50, p. 6). Additionally, the Magistrate Judge considered the evidentiary and financial realities of Nadya's case, which makes pursuing a trial risky (Document No.50, pp. 6-7).

Pursuant to Rule 72(b), Plaintiff has filed objections to the Magistrate Judge's Report and Recommendation. (Docket No. 52). This Court has reviewed the Plaintiff's argument, along with the Magistrate Judge's findings. After conducting a *de novo* determination of those portions of the R & R, the specified findings , and recommendation to which objection is made and applying the clearly erroneous standard to non-objected findings, this Court finds that the Magistrate Judge's findings are correct and adequately supported by the record.

### IV.    CONCLUSION

In light of the Plaintiff's objections, this Court adopts the recommendation of the Magistrate Judge that the settlement is in the best interest of Nadya Hamad given the Plaintiff's proof problems and the uncertainty, assuming Plaintiff were to win at trial, that any damage award would exceed the real value of the current offer. The Magistrate Judge's recommendation that the settlement should be approved because it is a fair settlement for a case with disputed issues of liability, causation and damages is adequately supported by the record. A trial would entail more litigation costs and Plaintiff's counsel would no longer waive any fees. Ultimately, it would be the Plaintiff that bears the risk of being exposed to liability for the Defendant's taxable costs in the event of an unsuccessful outcome. Accordingly, it is

**ORDERED** that the Report and Recommendation dated July 6, 2006 (Docket No. 50), be **ADOPTED** and **INCORPORATED BY REFERENCE HEREIN**, the Objections (Docket No.

52) are **OVERRULED**, this Court hereby **directs** the parties to consummate the settlement immediately, the Court **reserves jurisdiction** to enforce the settlement between the parties according to its terms, and the Clerk of the Court is **directed** to close this case file and terminate any pending motions.

      **DONE AND ORDERED** in Chambers at Tampa, Florida, this 15th day of September, 2006.

                                                          _____
                                                          ELIZABETH A. KOVACHEVICH
                                                          UNITED STATES DISTRICT COURT JUDGE

Copies to: All parties and counsel of record